CARLY J. MUNSON (SBN: 254598)
MELINDA BIRD (SBN: 102236)
NEERAJ KUMAR (SBN: 317765)
Disability Rights California
1831 K Street
Sacramento, California 95811-4114
Telephone: (916) 504-5800
Facsimile:  (916) 504-5801
Email: carly.munson@disabilityrightsca.org
         melinda.bird@disabilityrightsca.org
         neeraj.kumar@disabilityrightsca.org


THOMAS P. ZITO (SBN: 304629)
MICHELLE IORIO (SBN: 298252)
Disability Rights Advocates
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
Telephone: (510) 665-8644
Facsimile:  (510) 665-8511
Email: tzito@dralegal.org
         miorio@dralegal.org

*Attorneys for Plaintiffs*

ADDITIONAL ATTORNEYS ON FINAL PAGE

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.G., by and through his Next Friend, TANITA J.; P.P., by and through his General Guardian, REBECCA P.; and J.A.; on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>KERN COUNTY; KERN COUNTY PROBATION DEPARTMENT; TR MERICKEL, in his official capacity as Chief of the Probation Department; KERN COUNTY SUPERINTENDENT OF SCHOOLS; and MARY C. BARLOW, in her official capacity as Superintendent of Schools,<br><br>      Defendants. | **Case No.  1:18-cv-00257-DAD-JLT**<br><br>**JOINT NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND RELATED MOTIONS**<br><br><br>Complaint filed: Feb. 21, 2018<br><br>Hon. Jennifer L. Thurston |

1

## TABLE OF CONTENTS

2   **TABLE OF AUTHORITIES** ............................................................................... iv

3   **NOTICE OF MOTION AND MOTION** .......................................................... 1

4   **MEMORANDUM OF POINTS AND AUTHORITIES** ................................. 2

5   I.      INTRODUCTION ................................................................... 2

6   II.     PROCEDURAL HISTORY AND SETTLEMENT
        NEGOTIATIONS ................................................................. 4

7
    III.    SUMMARY OF THE PROPOSED SETTLEMENT
8           AGREEMENTS ................................................................... 7

9           A.      Class Definition ....................................................... 7

10          B.      The Probation Settlement ......................................... 7

11                  1.      Modifications to Policies and Procedures ...................... 8

12                          a.      Facility Culture and Environment ...................... 8

13                          b.      Case Management System ............................... 9

14                          c.      Programming ............................................ 9

15                          d.      Training and Coordination with KCSOS. ............. 9

16                          e.      Youth, Family and Staff Input ........................ 10

17                          f.      Complaints and Grievances. ........................... 10

18                          g.      Pepper Spray, Isolation, Seclusion, and
                                Confinement ............................................ 10
19
                            h.      Special Cases Meetings, Individualized
20                              Safety and Security Program, and Suicide
                                Prevention ............................................. 11
21
                            i.      Re-Entry ............................................... 12
22
                    2.      Term of Probation Settlement. ........................... 12
23
                    3.      Monitoring. ............................................... 12
24
                    4.      Dispute Resolution and Reservation of Jurisdiction
25                      and Enforcement. ....................................... 13

26                  5.      The Release of Claims and Dismissal of Actions ........ 13

27                  6.      Attorneys' Fees, Costs, and Expenses. ................. 14

28

C.    The KCSOS Settlement. ................................................................ 14

    7.    Modifications to Policies and Procedures. ................................... 14

        a.    Access to Adequate Education, Special Education, and Related Services for Youth with Disabilities. ............................................... 14

        b.    Behavioral Interventions and Supports, Mental Health Care, Educationally Related Mental Health Services, and Transition Planning. ......................................................... 15

        c.    Reasonable Accommodations ............................................ 15

        d.    Training and Coordination with Probation ...................... 16

    8.    Term of KCSOS Settlement. .......................................................... 16

    9.    Monitoring. ..................................................................................... 16

    10.    Dispute Resolution and Reservation of Jurisdiction and Enforcement. ........................................................................ 17

    11.    The Release of Claims and Dismissal of Actions. ........................ 17

    12.    Attorneys' Fees, Costs, and Expenses. ......................................... 18

IV.    LEGAL ARGUMENT ................................................................................. 18

    A.    Certifying the Class is Appropriate Under FRCP 23(a) and 23(b)(2). ............................................................................................ 18

        1.    The Proposed Class Meets the Numerosity, Typicality, Commonality, and Adequacy Requirements of Fed. R. Civ. Proc. 23(a). ................................... 19

            a.    The Proposed Class Meets the Numerosity Requirement. ................................................................. 19

            b.    The Proposed Class Satisfies the Commonality Requirement. .............................................. 20

            c.    The Proposed Class Satisfies the Typicality Requirement. ................................................................. 22

            d.    Class Representatives and Experienced Class Counsel Here Easily Meet the Adequacy Requirement. ................................................ 23

            e.    The Ascertainability Requirement Does not Apply Here, but Even if it Did, the Class is Sufficiently Ascertainable. .......................................... 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2.  The Proposed Class Meets the Requirements of Rule 23(b)(2) ................................................................. 26

B.  The Settlement Agreements Are Fair, Adequate, and Reasonable and Thus Should be Granted Preliminary Approval. ......................................................................... 27

1.  The Settlement Agreements Are Entitled to a Presumption of Fairness. ............................................ 28

2.  The Settlement Agreements Are Fair Given the Benefits to the Class and the Risks Associated with Continued Litigation. ................................................. 30

a.  The Settlement Agreements Will Result in Substantial Benefit to the Class. ....................... 30

b.  The Litigation Risks Support Preliminary Approval of the Settlement Agreements. .......... 31

C.  The Proposed Notice Satisfies Due Process and Should be Approved. ........................................................................ 32

D.  The Court Should Approve the Proposed Scheduling Order, Including Setting a Date for the Fairness Hearing. ................. 34

V.  CONCLUSION ............................................................................ 35

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Alberto v. GMRI, Inc.*, 252 F.R.D. 652 (E.D. Cal. 2008) ............................................................ 28

4

*Am. Council of the Blind v. Astrue*, No. C05-04696 WHA, 2008 WL 4279674
5     (N.D. Cal. Sept. 11, 2008) ..................................................................................................... 24

6     *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ................................................................... 21

7     *Baby Neal v Casey*, 43 F.3d 48 (3d Cir. 1994) ......................................................................... 21

8     *Briseno v. ConAgra*, 844 F.3d 1121 (9th Cir. 2017) ................................................................. 25

9     *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334
      (N.D. Cal. 2008) ............................................................................................................. 19, 26
10
*Carter v. Anderson Merchs., LP*, Nos. EDCV 08-00025-VAP (OPx), EDCV 09-
11    0216-VAP (OPx), 2010 WL 144067 (C.D. Cal. Jan. 7, 2010) ................................................. 28

12    *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ................................................ 27

13    *Davis v. Astrue,* 250 F.R.D. 476 (N.D. Cal. 2008) ......................................................................... 21

14    *Dunakin v. Quigley*, 99 F. Supp. 3d 1297 (W.D. Wash. 2015) ................................................... 26

15    *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ................................................... 22

16    *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008
      WL 8150856 (C.D. Cal. July 21, 2008) ................................................................................... 29
17
*General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1992) .............................................................. 21

18    *Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501 (N.D. Cal. 2011) ....................... 26

19    *Hall v. Cty. of Fresno*, No. 111CV02047LJOBAM, 2015 WL 5916741 (E.D. Cal.
20    Oct. 7, 2015) ............................................................................................................................. 29

21    *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011 (9th Cir. 1998) ........................................ 22, 23, 27, 28

22    *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ...................................................... 22

23    *Harper v. Law Office of Harris & Zide LLP*, No. 15-CV-01114-HSG, 2016 WL
      2344194, at *4 (N.D. Cal. May 4, 2016) ................................................................................. 25
24
*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964) ............................... 19

25    *Hawkins v. S2Verify*, No. C 15-03502 WHA, 2016 WL 3999458 (N.D. Cal. July
26    26, 2016) ................................................................................................................................. 19

27    *Hernandez v. Cty. of Monterey*, 305 F.R.D. 132 (N.D. Cal. 2015) ........................... 20, 21, 24, 25

28

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606 (N.D. Cal. 2015)........................ 3

*In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628 (C.D. Cal. 2009)............................................ 22

*In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal.
    June 10, 2005)........................................................................................................................ 31

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ......................................................... 27

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007)................................... 28

*In re Yahoo Mail Litig.*, 308 F.R.D. 577 (N.D. Cal. 2015)........................................................... 25

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    No. 2672 CRB (JSC), 2016 WL 6091259 (N.D. Cal. Oct. 18, 2016) .................................... 28

*Jewett v. Cal. Forensic Med. Grp., Inc.*, No. 213CV0882MCEACP, 2017 WL
    1356054 (E.D. Cal. Apr. 5, 2017)......................................................................................... 20

*Jewett v. Cal. Forensic Med. Grp., Inc.*, No. 213CV0882MCEACP, 2017 WL
    980446 (E.D. Cal. Mar. 13, 2017) ................................................................................... 19, 20

*Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951 (N.D. Cal.
    Nov. 28, 2012) ....................................................................................................................... 25

*Kincaid v. City of Fresno*, 244 F.R.D. 597 (E.D. Cal. 2007)........................................................ 21

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012)........................................................... 27, 32

*Mathein v. Pier 1 Imports (U.S.), Inc.*, No. 116CV00087DADSAB, 2017 WL
    6344447 (E.D. Cal. Dec. 12, 2017) ....................................................................................... 28

*Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036 (9th Cir. 2012) ........................... 22

*Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D Cal.
    2004) ................................................................................................................................. 29, 31

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .................................. 34

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ............................................................. 21, 22, 26

*Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010) .................................................................. 19

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, No. 14-cv-
    05596-JST, 2015 WL 5569462 (N.D. Cal. Sept. 22, 2015)..................................................... 26

*Riker v. Gibbons*, No. 3:08-CV-00115-LRH-RAM, 2009 WL 910971 (D.Nev.
    Mar. 31, 2009) ....................................................................................................................... 21

*Rodriguez v. Hayes*, 578 F.3d 1032 (9th Cir. 2009) ............................................................. 21, 27

*Rosas v. Baca*, No. CV 12-00428 DDP (SHx), 2012 WL 2061694 (C.D. Cal. June
    7, 2012) .................................................................................................................................. 19

*Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM (JCx), 2012 WL 10274679 (C.D. Cal. Nov. 13, 2012)..................................................................... 31

*Shelton v. Bledsoe*, 775 F.3d 554 (3d Cir. 2015) ........................................................ 26

*Shook v. El Paso Cty.*, 386 F.3d 963 (10th Cir. 2004)................................................. 26

*Singh v. Roadrunner Intermodal Servs., LLC*, No. 115CV01497DADBAM, 2018 WL 2412325 (E.D. Cal. May 29, 2018) .......................................................... 28

*Singh v. Roadrunner Intermodal Servs., LLC*,No. 115CV01497DADBAM, 2018 WL 4382202 (E.D. Cal. Sept. 13, 2018)........................................................ 28

*Spann v. J.C. Penney Corp.*, 314 F.R.D. 312 (C.D. Cal. 2016)................................... 34

*True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ..................... 28

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ................................. 27

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................ 21

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) ........................................................ 24

*Wehner v. Syntex Corp.*, 117 F.R.D. 641 (N.D. Cal. 1987)........................................ 22

**Statutes**

Fed. R. Civ. Proc. 23............................................................................................ passim

**Other Authorities**

5 Newberg on Class Actions § 13.15 (5th ed. 2011) ............................................. 28, 29

1

## NOTICE OF MOTION AND MOTION

2      PLEASE TAKE NOTICE THAT on October 11, 2019 at 9:30 a.m. or as soon thereafter

3  as the matter may be heard, Plaintiffs T.G. and P.P. ("Plaintiffs")[1], Defendants Kern County[2],

4  Kern County Probation Department, and Probation Chief TR Merickel (collectively "Probation"

5  or "Probation Defendants"), and Defendants Kern County Superintendent of Schools and

6  Superintendent Mary C. Barlow (collectively "KCSOS" or "Schools Defendants") (altogether,

7  "the Parties") will and hereby do jointly move the Court for entry of an Order: (1) granting

8  preliminary approval of the proposed class settlement agreement with Probation Defendants

9  ("the Probation Settlement") submitted herewith as Exhibit 1 to the Declaration of Thomas Zito

10 in Support of Joint Motion for Preliminary Approval ("Zito Decl."); (2) granting preliminary

11 approval of the proposed class settlement agreement with Schools Defendants ("the KCSOS

12 Settlement") submitted herewith as Exhibit 2 to the Zito Decl."); (3) certifying the proposed

13 settlement class; (4) approving the manner and form of giving notice of the settlements to the

14 class members; (5) scheduling deadlines for objections; and (6) scheduling a fairness hearing

15 regarding final approval of the settlements.

16      In support of this motion, the Parties state that the Probation Settlement and the KCSOS

17 Settlement (collectively "the Settlements" or "the Settlement Agreements"): (1) represent a

18 comprehensive settlement of the issues raised in the above-captioned case; (2) offer a fair and

19 equitable result to those affected by it; and (3) will result in significant long-term benefits both

20 for individuals who are members of the proposed settlement class and for Defendants.

21      The motion is based upon this Notice of Motion and Motion; the accompanying

22 Memorandum of Points and Authorities; the concurrently filed declarations and exhibits; all

23 pleadings and papers on file in this action; and any oral argument this Court permits.

24

---

25 [1] Named Plaintiff J.A. has not participated in this settlement. J.A. is over 18 years old, has
   completed all of his probation requirements, and has no possibility of returning to any of the
26 Kern County Juvenile Facilities. Munson Decl. ¶ 26. Therefore, he cannot adequately represent
   the Class because he no longer has any standing to do so.

27 [2] The County of Kern was named as "Kern County" in the complaint.  County of Kern is
   Defendant Kern County's official name.

28

1   Rule 23 of the Federal Rules of Civil Procedure does not require a hearing on a motion

2   seeking preliminary approval of a class action settlement and the Parties agree to forgo a hearing

3   unless the Court concludes that a hearing is necessary.

**MEMORANDUM OF POINTS AND AUTHORITIES**

5   **I.   INTRODUCTION**

6   After more than a year of negotiations, the Parties have reached a proposed resolution of

7   the issues raised in Plaintiffs' Complaint and the report published by Disability Rights California

8   and Disability Rights Advocates ("Plaintiffs' Counsel") concerning alleged discrimination

9   against youth with disabilities detained at the Kern County Juvenile Facilities (Juvenile Hall,

10  Crossroads, and Camp Erwin Owen) (collectively, "the Facilities").

11  The two resulting Settlement Agreements with Probation Defendants and Schools

12  Defendants are fair and reasonable and were the product of thorough arm's length negotiations,

13  which included engaging experts, many in-person settlement meetings between experienced and

14  knowledgeable counsel, exchanges of information, and a number of back and forth proposals.

15  While Defendants do not admit to liability, these Settlement Agreements do provide for

16  comprehensive injunctive relief. Under the Settlement Agreements, Defendants will modify their

17  policies, practices, and procedures to ensure that youth with disabilities are identified and

18  tracked, housed in a safe and supportive homelike environment, provided reasonable

19  accommodations, and given equal access to educational and rehabilitative programs and services.

20  The Probation Defendants will further create new roles for staff tasked specifically with

21  increasing rehabilitative programming, improving youth interactions with staff, reducing use of

22  force incidents, and generally changing the facility culture from a corrections model to a

23  treatment model.  The Schools Defendants will hire additional staff to enhance the education,

24  special education and related services offered to youth, as well as to train staff around mental

25  health diagnoses and behavior, de-escalation strategies and restorative practices.

26  The Settlement Agreements also provide for comprehensive reporting and monitoring.

27  Plaintiffs will monitor the Defendants' compliance throughout the Term of each of the

28

Settlement Agreements. along with a respective Monitoring Expert. Independent Monitoring Experts will also monitor Defendants' compliance and will periodically prepare written reports for review and comment by the Parties, based on the Monitoring Experts' assessment of Defendants' personnel, documents, facilities, records, and incarcerated youth. Plaintiffs' Counsel will review each monitoring report that is issued and provide feedback, as well as perform their own monitoring visits during the Term of the Settlement Agreements. The KCSOS Settlement will terminate once the 3-year Monitoring Term has expired and a final Monitoring Report is issued. Similarly, the Probation Settlement will terminate once the three (3)-year Monitoring Term has expired and a final Monitoring Report has been issued.

The Settlement Agreements are conditioned on certification of the following proposed class (the "Class") for settlement purposes:

> All youth with mental health, behavioral, learning, intellectual and/or developmental disabilities as defined by the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and/or Individuals with Disabilities Education Act who are currently detained, or who will be detained during the Monitoring Term (through August 31, 2022), at the Kern County Juvenile Facilities (Juvenile Hall, Crossroads, and Camp Erwin Owen).[3]

The Parties stipulate that certification of the proposed Class under Federal Rule of Civil Procedure 23(a) and 23(b)(2) is appropriate for settlement purposes. The Settlement Agreements contemplated herein would result in a single set of policies, practices, and procedures concerning education and use of force in the Facilities that are applicable to all Class members. Similarly, the modifications to current policies, practices, and procedures concerning education and use of force in the Facilities in the Settlement Agreements will benefit all Class members.

---

[3] This class definition has been expanded from that of the original Complaint to encompass youth at the Camp Erwin Owen facility as the Settlements extend to the policies and practices at that facility. Should the Court certify this Class as defined for settlement, Plaintiffs will file an amended complaint with the Motion for Final Approval. *See, e.g. In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 620 (N.D. Cal. 2015) (certifying class different from class pled in complaint, allowing the filing of an amended complaint to conform to the class if necessary, and noting that amendment of the class definition is allowable until judgment); Fed. R. Civ. Proc. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment").

1    Because the proposed Settlement Agreements are fair, adequate, and reasonable, and are

2   the product of serious, informed, and non-collusive negotiations between experienced and

3   knowledgeable counsel, the Settlement Agreements satisfy all the criteria for preliminary

4   approval under Rule 23 of the Federal Rules of Civil Procedure.  Additionally, the Parties'

5   proposed notice and schedule for a fairness hearing will allow Class members an adequate

6   opportunity to review and comment on the Settlement Agreements and is consistent with the

7   Parties' desire for prompt implementation of the Settlement Agreements.  Accordingly, the

8   Parties ask that the Court: (i) preliminarily approve the Settlement Agreements; (ii) approve the

9   proposed form of the Class Notice and distribution plan; and (iii) set a fairness hearing.  The

10   Parties' counsel have negotiated the foregoing and agree to the form and content.

11    The proposed Class will, upon final approval, release all claims for injunctive or

12   declaratory relief relating to the subject matter of the Complaint, including claims under the

13   Americans with Disabilities Act and any and all applicable state disability access laws.

14    **II.     PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS**

15    Plaintiffs, on behalf of themselves and a Class of all others similarly situated, filed this

16   action on February 21, 2018, alleging claims for injunctive and declaratory relief under the

17   Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"), Section 504 of the

18   Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* ("Rehabilitation Act"), the Individuals with

19   Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1400 *et. seq*. ("IDEA"), California

20   Government Code Section 11135 and the California Education Code.  In summary, Plaintiffs

21   alleged that the Probation Defendants and the Schools Defendants routinely punish, isolate, and

22   intimidate youth in their care while depriving them of crucial educational and rehabilitative

23   services.  Plaintiffs further alleged that such policies and practices have an exceptionally adverse

24   impact on youth with mental health, behavioral, learning, intellectual, and/or developmental

25   disabilities.  Prior to filing the Complaint, Plaintiffs' Counsel had conducted an investigation into

26   the conditions of confinement and education practices in the Facilities through Disability Rights

27   California's role and authority as the protection and advocacy system for the State of California.

28

---

1   Following this investigation, the Parties entered into a Structured Negotiations Agreement.  The

2   findings of this investigation were included in the Complaint and in a simultaneously released

3   public report ("the Report").[4]

4         The Parties began negotiations in early 2018, and on March 8, 2018, the Parties stipulated

5   to request that the Court stay the lawsuit while the Parties engaged in structured negotiations,

6   which the Court granted.  Pursuant to the Structured Negotiations Agreement, Probation

7   Defendants agreed to retain experts in: (a) the ADA and the Rehabilitation Act; (b) California

8   state law requirements pertaining to persons with disabilities; and (c) the operation of juvenile

9   halls.  Similarly, Schools Defendants agreed to retain experts in: (a) the IDEA, ADA and the

10  Rehabilitation Act; (b) California state education law requirements pertaining to persons with

11  disabilities; and (c) the operation of schools inside of juvenile halls.  The retained experts were

12  tasked with evaluating the claims in Plaintiffs' Complaint and Report.  After several sessions of

13  arms-length negotiations, Plaintiffs and Probation Defendants jointly selected the Council of

14  Juvenile Correctional Administrators, Inc. ("CJCA") as the evaluating experts; Plaintiffs and

15  Schools Defendants jointly selected Peter Leone, Ph.D., and Judy Elliott, Ph.D. ("Education

16  Experts") as the evaluating experts.

17        From May 21 through 25, 2018, CJCA conducted on-site inspections at the Facilities;

18  Education Experts conducted their on-site inspection on June 11, 12, 25, and 26, 2018.  Among

19  other things, the experts met with administrators, staff, and youth at the Facilities, and requested

20  and reviewed documents and information pertaining to the Facilities, and the education provided

21  to youth confined therein.  CJCA and the Education Experts each provided a written report and

22  recommendations to the Parties containing their evaluation of the issues at the Facilities as they

23  relate to the above-captioned matter, along with recommended changes to policies, practices, and

24  procedures at the Facilities.  The Defendants subsequently provided Plaintiffs with initial

25

26  _____
    [4] Available at: https://dralegal.org/wp-
27  content/uploads/2018/02/2018Feb6KCJCReportFinal_Accessible_3.30.18.pdf and
    https://www.disabilityrightsca.org/public-reports/kern-county-juvenile-correctional-facilities-
28  reports

_____

*T.G., et al. v. Kern County, et al.*, Case No 1:18-cv-00257-JLT
**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND
RELATED MOTIONS**                                                              **5**

1    confidential written responses to the experts' reports to facilitate settlement discussions.

2        After receiving recommendations from CJCA and the Education experts, the Parties met

3    and conferred jointly and separately by phone and in person more than twenty times between

4    September 2018 and the filing of the Fourth Joint Status Report in July 2019 to negotiate the

5    Settlement Agreements and strategies for implementing and monitoring these recommendations.

6    Both the Probation and Schools Defendants have agreed to incorporate these strategies into their

7    respective Settlement Agreements.

8        As part of the Probation Settlement, the Plaintiffs and Probation Defendants have

9    negotiated and developed a written plan, titled the Kern County Probation Action Plan

10   ("Probation Plan"), that lays out the significant changes that the Probation Defendants will make

11   in the Facilities and the Parties' plans for implementation and monitoring.  Zito Decl., Ex. 1 at

12   Ex. A.  The Probation Plan is detailed and provides substantial and meaningful supports for

13   detained youth with disabilities.  The Probation Plan is the result of negotiations with the

14   Plaintiffs and is based on the CJCA recommendations, including the Probation Defendants' site

15   visits to four other juvenile corrections facilities recommended by CJCA, their further research

16   into the areas of trauma informed care, adolescent development, youth with mental health

17   disabilities, and de-escalation.  CJCA has been consulted for input regarding the form and

18   substance of the changes, as well as the monitoring logistics of the Probation Plan.

19       Similarly, as part of the KCSOS Settlement, the Plaintiffs and Schools Defendants have

20   negotiated and developed a detailed written plan, titled the Court Schools Implementation Plan

21   ("Schools Plan"), that lays out the significant changes that the Schools Defendants will adopt in

22   the schools that serve students housed at the Facilities, as well as the Parties' plans for

23   implementation and monitoring.  Zito Decl., Ex. 2 at Ex. A.  The Schools Plan is the result of

24   negotiations with the Plaintiffs and is based on the Education Expert's recommendations and

25   provides substantial and meaningful educational services for detained youth with disabilities.

26   Dr. Elliott has been actively involved in collaborating on the form, substance, and monitoring

27   logistics of the plan.  Zito Decl., ¶¶ 18, 20(a), 23.

28

1   As outlined above, the Parties have completed the laborious work of developing the

2   detailed plans for substantive reforms, as well as the implementation and monitoring of these

3   reforms. These negotiations were time- and resource-intensive for all Parties, but were necessary

4   for the Parties' ultimately successful resolution of this action. The Parties have agreed that

5   Plaintiffs' Counsel has the right to seek and recover reasonable attorneys' fees. The Plaintiffs

6   will make the appropriate motion to the Court for approval of any amount of fees to be awarded

7   to the Plaintiffs consistent with the terms of the settlement agreement.

8   ### III.   SUMMARY OF THE PROPOSED SETTLEMENT AGREEMENTS

9   The Probation Settlement and the KCSOS Settlement, attached in full as Exhibits 1 and 2

10  to the Declaration of Thomas Zito, respectively, cover the following negotiated and agreed-upon

11  terms[5]:

12  ### A.   Class Definition.

13  The Parties define the "Plaintiff Class" for the purposes of the Settlement Agreements as

14  "all youth with mental health, behavioral, learning, intellectual and/or developmental disabilities

15  as defined by the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and/or

16  Individuals with Disabilities Education Act who are currently detained, or who will be detained

17  during the Monitoring Term (through August 31, 2022), at the Kern County Juvenile Facilities

18  (Juvenile Hall, Crossroads, and Camp Erwin Owen)." See Zito Decl. Ex. 1 ("Probation

19  Settlement") at ¶ 4.2, and Ex. 2 ("KCSOS Settlement") at ¶ 4.2[6].

20  ### B.   The Probation Settlement.

21

22  [5] This summary of the proposed terms of the Settlement Agreements is qualified in its entirety by the references to the terms and provisions in the proposed Settlement Agreements (each of which

23  includes their respective plans which are incorporated into those agreements). In the event of any inconsistencies between the terms and provisions of the Settlement Agreements and the

24  summary set forth herein, the terms and provisions of the Settlement Agreements shall govern. In addition, capitalized terms used in this summary shall have the same meanings ascribed to

25  them as set forth in the Settlement Agreements.

26  [6] The Settlement Agreements contemplate certifying a class of youth "who are currently detained, or who will be detained during the Monitoring Term (defined in Section 6.1.1, below),

27  at the Kern County Juvenile Facilities (Juvenile Hall, Crossroads, and Camp Erwin Owen)." The Monitoring Term begins upon execution of the agreements, in this case August 30, 2019 and

28  runs for a period of three years (through August 31, 2022).

1    The Probation Settlement is entered into by Plaintiffs and Probation Defendants. The

2  Probation Settlement operates in conjunction with the related Probation Plan, attached to the

3  Probation Settlement as Exhibit A, which is fully incorporated into the Settlement.

4    **1.    Modifications to Policies and Procedures.**

5    **a.    *Facility Culture and Environment.***

6    As per the Probation Settlement, Probation Defendants have developed a plan to

7  transition from a corrections model to a treatment model, with new training for staff to reform

8  and to reduce the use of Oleoresin Capsicum ("O.C." or "pepper") spray, restrictive housing, and

9  mechanical restraints, with special attention paid to youth with disabilities. Probation Plan § 1.

10 Probation will create an Implementation Team to oversee the Probation Plan, conduct listening

11 sessions and open other lines of communication to hear concerns from staff about the transition,

12 provide additional training and continued skill development for staff working with youth with

13 disabilities, and identify existing staff leaders to act as champions and mentors to those staff who

14 are "on the fence" or opposed to the changes. Probation Plan § 1.

15    Further, Probation Defendants will create new Re-Entry, ADA and Programming

16 ("RAP") Units within each of the Facilities, comprising a total of 26 staff members. Probation

17 Plan Intro and *passim*. These specialized staff will be vital in increasing programming,

18 improving staff/youth interactions, reducing use of force incidents and changing facility culture.

19 *Id.* These staff will be completely separate from existing facility housing unit staffing, allowing

20 them to focus on their specific assigned tasks. *Id.* RAP staff will be assigned as coordinators for

21 Re-Entry, Program, Volunteer, School and ADA services. *Id.* Additional RAP Unit staff will

22 support these coordinators and provide other duties as needed. *Id.* Furthermore, all RAP Unit

23 staff will be trained to act as Crisis Awareness Response ("CARE") Team members. *Id.* The

24 CARE team will consist of staff designated to respond to crisis situations within each facility in

25 an attempt to de-escalate situations before they deteriorate further.

26    Probation Defendants will also coordinate this facility culture change by, among other

27 things: (1) reading and learning more about developmentally informed juvenile justice and

28

positive youth strategies; (2) visiting juvenile facilities that have embraced developmentally informed juvenile justice, trauma informed, therapeutic environments and positive youth development; (3) communicating with agency directors who have made a similar transition; (4) incorporating the principles of the above ideas into all training, policies and procedures and providing continuing education for staff; (5) providing strong leadership for the above ideas and reinforcing in all communication with staff; (6) consulting with experts on the above ideas for assistance in incorporating the principles into training, policies and procedures; and (7) ensuring job descriptions and hiring processes reflect the changes in the above ideas.  Probation Plan § 8.

Probation Defendants will also improve the physical Facilities by creating more artwork, murals, and inspirational sayings throughout the Facilities, as well as offering youth more books, games, and craft supplies, to assist in fostering a homelike environment.  Probation Plan § 6.  In particular, at the Juvenile Hall and Crossroads Facilities, Probation Defendants will paint units with vibrant colors and decorations that reflect the culture of the youth served, remove outdated or negative signage, and post information on daily activities.  Probation Plan § 11.

**b.  *Case Management System.***

Probation will acquire a Case Management System that can provide critical measures in monthly reports to track the use of force, including O.C. spray, mutual fights, youth assaults, room confinement, youth grievances and other issues, for ease of monitoring compliance with the Probation Implementation Plan.  Probation Plan § 2.

**c.  *Programming.***

Probation will (1) develop a full schedule of structured activities for youth in the afternoons, evenings and weekends with the help of local resources; (2) assign a volunteer coordinator to conduct outreach and manage volunteer activities; (3) get input from staff, volunteers, youth and families for ideas on reducing idleness and providing more meaningful and structured activities for youth; and (4) post a daily schedule of activities that is reviewed by leadership and followed closely by staff.  Probation Plan § 3.

**d.  *Training and Coordination with KCSOS.***

1       Probation Defendants will provide training to all staff in the following areas: (1) crisis

2  intervention; (2) trauma informed care; (3) adolescent development and behavior; and (4) mental

3  health disabilities.  Probation Plan § 4.  Probation will further develop detailed policies and

4  procedures to incorporate ideas and philosophies learned from above training.  Probation Plan §

5  4.  Probation Defendants will identify staff with desired skills that use alternatives to O.C. spray

6  and use them as mentors to other staff.  Probation Plan § 4. Probation will also invite KCSOS to

7  their staff trainings, as well as attend trainings provided by KCSOS.  Probation Plan § 18.

8  Probation will consult with KCSOS in, among other things, (1) drafting youth handbooks at an

9  appropriate comprehension level for special education students, (2) making accessible sensory

10  tools for special education students, and (3) increasing the number and variety of reading

11  materials available to youth in their housing units.  Probation Plan § 18.

12                    **e.**  *Youth, Family and Staff Input.*

13       Probation Defendants will create and distribute surveys to youth, family and staff to

14  determine strengths, service gaps and perception regarding the facilities, programs, and services.

15  Probation Plan § 5.  Probation Defendants will then incorporate appropriate ideas and

16  suggestions from youth, family and staff surveys into programs, services and practices.

17  Probation Plan § 5.

18                    **f.**  *Complaints and Grievances.*

19       Probation Defendants will develop a robust review process for staff and youth grievances

20  to ensure facility leadership is aware of and addresses such concerns.  Probation Plan § 7.

21                  **g.**  *Pepper Spray, Isolation, Seclusion, and Confinement.*

22       Probation Defendants will incorporate strategies to mitigate the need for use of force,

23  including reducing the use of O.C. spray.  Probation Plan § 9.  As part of this effort, Probation

24  Defendants will, among other things: (1) only use O.C. spray in accordance to its policy (see

25  Exhibit A of Probation Plan); (2) create Crisis Awareness Response Teams ("CARE teams") of

26  staff dedicated to resolving and de-escalating situations without the need for physical force

27  interventions; (3) refrain from using O.C. spray where mental health treatment is warranted, for

28

*T.G., et al. v. Kern County, et al.*, Case No 1:18-cv-00257-JLT
**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND
RELATED MOTIONS**          **10**

1  example in response to threats of self-harm; and (4) debrief staff after an O.C. incident.

2  Probation Plan § 9.

3       Similarly, Probation Defendants will gradually reduce the length of time youth spend in

4  isolation.  Probation Plan § 10.  For example, Probation Defendants will: (1) eliminate the

5  "program restriction" sanctions that require youth to sit in a chair outside of their rooms; (2)

6  create CARE teams to resolve and de-escalate situations without the use of isolation; (3) limit the

7  amount of time a youth spends in separation following a safety and security incident; (4) change

8  policy and procedures to reduce time youth spend in separation for investigations or pending

9  disciplinary hearings; and (5) consult with youth and staff to develop and implement a more

10  robust behavior management and incentive system.  Probation Plan § 9.

11       Probation Defendants will also: (1) track the number and types of room separations; and

12  (2) require mental health consultation for youth who self-separate for more than four hours

13  and/or for youth who self-separate frequently.  Probation Plan § 16.

### h.  *Special Cases Meetings, Individualized Safety and Security Program, and Suicide Prevention.*

16       Probation's new RAP Units will oversee Special Cases Meetings, where the RAP Unit

17  staff and other staff will discuss youth on the Special Cases List, e.g., youth with security, mental

18  health, ADA, education, behavioral, and/or medical issues.  Probation Plan § 13.

19       Probation will further revise the Individualized Safety and Security Program ("ISSP")

20  manual to ensure that behavioral health professionals have experience with youth with

21  disabilities, trauma informed care, delinquency variables, and have training in leading a team.

22  Probation Plan § 14.  ISSP plans will clearly state: (1) why the plan would not unfairly or

23  disproportionately deprive youth of programs, services or increase his time in custody; (2) how

24  the plan relates to other special education, behavioral, mental health, or medical plans; (3) the

25  youths' progress on the ISSP; (4) why any modifications or revisions are made; and (5) when

26  reviews occur (no less than weekly).  Probation Plan § 14.  Youth and their parents will be

27  informed of the ISSP process, how they can participate in the process, as well as the recourses

28

1  available if they disagree with the process.  Probation Plan § 14.

2      Probation will also change the language in the suicide prevention policy to: (1) be more

3  in line with the Massachusetts Youth Screening Instrument ("MAYSI") designed to identify the

4  potential mental health needs of adolescents involved in the juvenile justice system; and (2) more

5  accurately reflect risk-level identification and awareness.  Probation Plan § 15.

6                        **i.  *Re-Entry.***

7      Probation Defendants will assign a dedicated RAP staff to act as a re-entry coordinator at

8  each facility.  They will bolster the frequency and scope of re-entry meetings.  These meetings

9  will address both in custody and community needs upon release.  Probation Plan § 17.  The case

10 plan will be revised at least bi monthly by the full team to update goals and plans upon release

11 for housing, education, vocation, medical and mental health services.  Probation Plan § 17.

12                  **2.    Term of Probation Settlement.**

13     The Parties agree that the Probation Settlement, and all of its terms, will expire, and will

14 no longer be enforced or enforceable in any court, upon the completion of the Monitoring Term

15 and issuance of the final monitoring report.  Probation Settlement § 8.  The Monitoring Term

16 expires three (3) years after the Execution Date of the Probation Settlement.  Probation

17 Settlement § 6.1

18                          **3.    Monitoring.**

19     Plaintiffs and Probation Defendants have selected CJCA to act as the Monitoring Expert

20 to monitor compliance with the Probation Plan for the term of the Probation Settlement.

21 Probation Settlement § 6.  The Monitoring Expert will prepare a written report for review and

22 comment by the Parties on a quarterly basis for the first year of the Monitoring Term and on a

23 semiannual basis thereafter.  *Id.* § 6.22.  At the conclusion of the Monitoring Term, the

24 Monitoring Expert will issue a final report.  *Id*. § 6.2.2.3.  The Monitoring Expert will be given

25 full and reasonable access throughout the Term of the Agreement to any and all information

26 necessary to assist in conducting the review of the Probation Action Plan and monitoring

27 Probation Defendants' progress in its implementation, including access to Probation's personnel,

28

1    documents, facilities, records, and incarcerated youth.  *Id*. § 6.2.1.  In the event that CJCA is

2    unable to serve as Monitoring Expert for any reason in the future, the Parties have agreed upon a

3    process through which to replace CJCA.  *Id*. § 6.1.4.

4         Plaintiffs' Counsel will review each monitoring report that is issued, and provide

5    feedback, if any, in writing to the Monitoring Expert and copy Probation Defendants' counsel on

6    that feedback.  Plaintiffs' Counsel will also perform at least one monitoring visit during the term

7    of the agreement.  *Id*. § 6.3

8                    **4.    Dispute Resolution and Reservation of Jurisdiction and
                         Enforcement.**

9
10        The Parties have agreed to a detailed dispute resolution process that requires the Parties

11   to meet and confer in good faith to attempt to resolve disputes and allows for a mediation before

12   Magistrate Judge Thurston, if necessary.  *Id.* § 7.  If the dispute cannot be resolved through the

13   meet and confer process and/or the mediation process, the Parties agree that remaining disputes

14   will be heard and decided by this Court, and that any relief arising from such disputes is bounded

15   by and subject to the limitations and terms of the Probation Settlement.  *Id.* § 7.2.4.  Enforcement

16   of the proposed Probation Settlement will be subject to the continuing jurisdiction of this Court

17   throughout the Term of the Probation Settlement.  *Id*. § 10.

18                    **5.    The Release of Claims and Dismissal of Actions.**

19        In exchange for the injunctive relief proposed in the Probation Settlement Agreement,

20   upon Court approval, Plaintiffs and Plaintiff Class agree to release any and all claims, rights,

21   demands, charges, complaints, actions, suits, and causes of action, for injunctive or declaratory

22   relief, that have been brought in the Lawsuit under the ADA, Rehabilitation Act, IDEA, and/or

23   state laws arising from February 21, 2016, through the Term of the Agreement brought against

24   Probation Defendants.  *Id.* § 11.2.  However, the release does not apply to any claims for

25   compensatory education or individual due process claims arising under the IDEA or Section 504,

26   any claims for reasonable accommodations related to physical access, communication access,

27   and/or accommodations otherwise relating to hearing, vision and/or mobility disabilities arising

28

---

1   under the ADA or Section 504, or any monetary claims that may exist under any relevant laws.

2   *Id.* Additionally, the release does not apply to claims relating to enforcement of the Probation

3   Settlement. *Id.*

4                    **6.    Attorneys' Fees, Costs, and Expenses.**

5           Probation Defendants have agreed that Plaintiffs' Counsel has the right to seek and

6   recover reasonable attorneys' fees. The Plaintiffs will make the appropriate motion to the Court

7   for approval of any amount of fees to be awarded to the Plaintiffs consistent with the terms of the

8   settlement agreement. Probation Settlement § 12.

9                    **C.    The KCSOS Settlement.**

10          The KCSOS Settlement is entered into by Plaintiffs and KCSOS. The KCSOS

11  Settlement operates in conjunction with the related Schools Plan, attached to the KCSOS

12  Settlement as Exhibit A, which is fully incorporated into the Settlement.

13                   **7.    Modifications to Policies and Procedures.**

14                        **a.    *Access to Adequate Education, Special Education, and***
                                  ***Related Services for Youth with Disabilities.***

15          The Schools Defendants have agreed to take a number of steps to improve their education

16  programs at the Facilities. KCSOS will develop an intake Classroom at Juvenile Hall to which

17  all youth are assigned during their initial detention, where KCSOS will: (1) assess students'

18  needs, including the need for Education Related Mental Health Services ("ERMHS"); (2)

19  provide basic instruction in literacy, numeracy, and current events; (3) determine students' prior

20  school history and special education eligibility; (4) identify English learners; and (5) determine

21  students' instructional needs. Schools Plan §§ 1.1 and 2.10. Further, KCSOS will place students

22  in classrooms by grade level and, if necessary, group them by ability level, to ensure they are

23  receiving grade appropriate content and coursework. Schools Plan § 1.2. KCSOS will also,

24  among other things: (1) provide students who have met graduation requirements with post-

25  secondary college or vocational learning opportunities (e.g., resume building, online enrollment

26  in college courses) (Schools Plan § 1.3); (2) provide professional learning opportunities for

27

28

---

1  education staff to reinforce and further develop the delivery of robust and engaging instruction

2  (Schools Plan § 1.6); (3) implement web-based instructional technology (Schools Plan § 1.7); (4)

3  hire additional school counselors (Schools Plan § 1.10); (5) hire additional librarians to promote

4  literacy (Schools Plan § 1.11); (6) develop and implement an intensive reading instruction

5  support program (Schools Plan § 1.12); and (7) provide push-in services and support for students

6  with disabilities (Schools Plan § 1.15).

7           **b.  *Behavioral Interventions and Supports, Mental Health***
           ***Care, Educationally Related Mental Health Services, and***
8           ***Transition Planning.***

9           KCSOS will provide sensory tools for all students who need breaks during educational

10  programming.  Schools Plan § 2.3.  KCSOS will further create and maintain a formal tracking

11  system of school exclusion that records the daily removal incidents (e.g., by youth, date, reason,

12  number of minutes, personnel requesting removal) for all students, especially for students with

13  disabilities, and ensure that this information is shared with both education and probation staff on

14  a regular basis (e.g., bi-weekly, monthly).  Schools Plan § 2.4.  KCSOS will also, among other

15  things: (1) create a system to ensure all service providers, including ERMHS clinicians, are made

16  aware of pending release dates of students so that planning and transition services can be

17  coordinated (Schools Plan § 2.6); (2) invite designated mental health clinicians, in addition to

18  ERMHS providers, to IEP meetings of youth on their caseloads and participate in the

19  development of the goals and objectives for mental health and related services on youths' IEP's

20  (Schools Plan § 2.8); (3) ensure that ERMHS providers communicate with mental health

21  providers to promote therapeutic delivery of mental health services for youth with IEPs (Schools

22  Plan § 2.13); and (4) provide regular orientation and training for Probation staff on mental health

23  diagnoses and the impact on youth behavior (Schools Plan § 2.12).

24           **c.  *Reasonable Accommodations.***

25           KCSOS will develop and/or adopt a screening instrument as part of an intake assessment

26  process to identify youth with disabilities who are entitled to accommodations, support, and

27  protection while in custody.  Schools Plan § 3.1.  KCSOS will also develop material and

28

1    procedures better matched to the literacy and comprehension skills of youth at the Facilities,

2    including ensuring that any materials provided to youth describing school-based behavior

3    management will be available graphically and at their developmental level.  Schools Plan § 3.2.

4    KCSOS will further develop a protocol for use by the ADA coordinators to review policies and

5    practices that might have an adverse impact on youth with disabilities.  Schools Plan § 3.3.

6                    **d.  *Training and Coordination with Probation.***

7            KCSOS will provide training to education staff on the use of data to drive instructional

8    decision making, including training on a suite of data reports that are used by administration and

9    education staff to manage, coordinate services and monitor performance for all students

10   including students with disabilities.  Schools Plan §§ 4.1 and 4.2.  KCSOS will regularly review

11   such data at administrative and staff meetings to monitor youth performance across multiple

12   measures.  Schools Plan § 4.3. KCSOS will further create a comprehensive electronic log that

13   actively documents the process and outcome of youth referred to the Student Support Team.

14   Schools Plan § 4.5.  KCSOS will also develop and deliver professional learning opportunities for

15   Probation and education staff around mental health diagnoses and behavior, identification of

16   youth with disabilities, de-escalation strategies, restorative practices, Behavior Intervention

17   Plans, ADA weekly meetings, Individualized Education Plans ("IEPs"), ERMHS and other

18   related services, and the behavior management system.  Schools Plan §§ 4.10-4.13.  Finally,

19   KCSOS will schedule regular meetings with Probation and education staff to share information

20   from critical incident and ADA protocol reviews, new or revised policies and practices, and to

21   problem solve areas of need.  Schools Plan §§ 4.14-4.17.

22                          **8.    Term of KCSOS Settlement.**

23           The Parties agree that the KCSOS Settlement, and all of its terms, will expire, and will no

24   longer be enforced or enforceable in any court, upon the completion of the Monitoring Term and

25   issuance of the final Monitoring Report.  KCSOS Settlement § 8.  The Monitoring Term expires

26   three years after the Execution Date of the KCSOS Settlement.  KCSOS Settlement § 6.1.

27                              **9.    Monitoring.**

28

1       A Monitoring Expert will monitor KCSOS's compliance with the Court Schools

2   Implementation Plan for the Term of the KCSOS Settlement.  KCSOS Settlement, § 6.1.  The

3   Monitoring Expert will prepare a written report for review and comment by the Parties on a

4   quarterly basis for the first year of the Monitoring Term and on a semiannual basis thereafter.

5   KCSOS Settlement, § 6.2.2.3.  At the conclusion of the Monitoring Term, the Monitoring Expert

6   will issue a final report.  *Id.*  The Monitoring Expert will be given full and reasonable access

7   throughout the Term of the Agreement to any and all information necessary to assist in

8   conducting the review of the Court Schools Implementation Plan and monitoring KCSOS's

9   progress in its implementation, including access to KCSOS personnel, documents, facilities,

10  records, and incarcerated youth.  *Id.* § 6.2.1.  The Parties have agreed that Judy Elliott, Ph.D. will

11  act as Monitoring Expert, and they have agreed upon a process by which to replace Dr. Elliot, if

12  necessary.  *Id.* § 6.1.

13      Plaintiffs' Counsel will review each monitoring report that is issued, and provide

14  feedback, if any, in writing to the Monitoring Expert and copy KCSOS's counsel on that

15  feedback.  Plaintiffs' Counsel will also perform at least one monitoring visit during the term of

16  the agreement.  *Id.* § 6.3.

17          **10.**    **Dispute Resolution and Reservation of Jurisdiction and
Enforcement.**

18  

19      The Parties have agreed to a detailed dispute resolution process that requires the Parties

20  to meet and confer in good faith to attempt to resolve disputes and allows for a mediation before

21  Magistrate Judge Thurston, if necessary.  KCSOS Settlement § 7.  If the dispute cannot be

22  resolved through the meet and confer process and/or the mediation process, the Parties agree that

23  remaining disputes will be heard and decided by this Court, and that any relief arising from such

24  disputes is bounded by and subject to the limitations and terms of the KCSOS Settlement.  *Id*. §

25  7.2.  Enforcement of the proposed KCSOS Settlement will be subject to the continuing

26  jurisdiction of this Court throughout the Term of the KCSOS Settlement.  *Id*. §§ 7.2.4, 10.

27          **11.**    **The Release of Claims and Dismissal of Actions.**

28  

*T.G., et al. v. Kern County, et al.*, Case No 1:18-cv-00257-JLT
**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND
RELATED MOTIONS**      **17**

1    In exchange for the injunctive relief proposed in the KCSOS Settlement, Plaintiffs have

2    agreed to release any and all claims, rights, demands, charges, complaints, actions, suits, and

3    causes of action, for injunctive or declaratory relief, that have been brought in the Lawsuit under

4    the ADA, Rehabilitation Act, IDEA, and/or state laws arising from February 21, 2016, through

5    the Term of the Agreement brought against KCSOS. *Id.* § 11.  However, the release does not

6    apply to any claims for compensatory education or individual due process claims arising under

7    the IDEA or Section 504, any claims for reasonable accommodations related to physical access,

8    communication access, and/or accommodations otherwise relating to hearing, vision and/or

9    mobility disabilities arising under the ADA or Section 504, or any monetary claims that may

10    exist under any relevant laws.  *Id.*  Additionally, the release does not apply to claims relating to

11    enforcement of the KCSOS Settlement.  *Id.*

12    **12.    Attorneys' Fees, Costs, and Expenses.**

13    The KCSOS Defendants have agreed that Plaintiffs' Counsel has the right to seek and

14    recover reasonable attorneys' fees.  The Plaintiffs will make the appropriate motion to the Court

15    for approval of any amount of fees to be awarded to the Plaintiffs consistent with the terms of the

16    settlement agreement.  KCSOS Settlement § 13.

17    **IV.    LEGAL ARGUMENT**

18    **A.    Certifying the Class is Appropriate Under FRCP 23(a) and 23(b)(2)[7].**

19    The Parties have stipulated to seek certification of the following settlement Class at the

20    time of the fairness hearing: "all youth with mental health, behavioral, learning, intellectual

21    and/or developmental disabilities as defined by the Americans with Disabilities Act, Section 504

22    of the Rehabilitation Act, and/or Individuals with Disabilities Education Act who are currently

23    detained, or who will be detained during the Monitoring Term (through August 31, 2022), at the

24    Kern County Juvenile Facilities (Juvenile Hall, Crossroads, and Camp Erwin Owen)."

25

26

27    [7] Defendants join in this motion only for settlement purposes and do not waive any defenses they might raise as to class certification or the standing of Plaintiffs to pursue the relief sought herein should the Court not approve class settlement as proposed.

28

1          **1.    The Proposed Class Meets the Numerosity, Typicality,**
               **Commonality, and Adequacy Requirements of Fed. R. Civ.**
2              **Proc. 23(a).**

3          Plaintiffs assert, and Defendants do not contest for purposes of settlement only, that the

4    proposed Class satisfies the four threshold requirements for Class certification under Federal

5    Rule of Civil Procedure 23(a).  These requirements are: (1) numerosity of potential Class

6    members, (2) commonality of factual and legal issues among Class members, (3) typicality of the

7    Class representatives' claims, and (4) adequate representation of Class-wide interests by Class

8    representatives and Class counsel.

9                    **a.    *The Proposed Class Meets the Numerosity Requirement.***

10         Numerosity requires that the Class be so numerous that joinder of all members is

11   impracticable. Fed. R. Civ. Proc. 23(a)(1).  Plaintiffs need not establish that joinder is

12   impossible, but merely that joining all Class members would be difficult or inconvenient.  *Harris*

13   *v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).  Although there are

14   no absolute numerical limitations, courts have found that numerosity is satisfied when the

15   prospective Class includes at least forty members.  *E.g., Hawkins v. S2Verify*, No. C 15-03502

16   WHA, 2016 WL 3999458, at *3 (N.D. Cal. July 26, 2016); *Rannis v. Recchia*, 380 F. App'x 646,

17   651 (9th Cir. 2010); *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D.

18   334, 346 (N.D. Cal. 2008) ("[V]arious courts have found that the numerosity factor is satisfied if

19   the Class comprises 40 or more members[.]").

20         Courts have routinely found the numerosity requirement satisfied where, as here, the

21   proposed Class comprises current and future inmates who seek only declaratory and injunctive

22   relief.  *See, e.g.*, *Rosas v. Baca*, No. CV 12-00428 DDP (SHx), 2012 WL 2061694, at *2 (C.D.

23   Cal. June 7, 2012) (finding a Class of inmates sufficiently numerous where "the Jails currently

24   house thousands of inmates, and are certain to house many more in the future"); *Jewett v. Cal.*

25   *Forensic Med. Grp., Inc.*, No. 213CV0882MCEACP, 2017 WL 980446, at *5 (E.D. Cal. Mar.

26   13, 2017), *report and recommendation adopted sub nom. Jewett v. Cal. Forensic Med. Grp.,*

27   *Inc.*, No. 213CV0882MCEACP, 2017 WL 1356054 (E.D. Cal. Apr. 5, 2017) (finding Class

28

1  sufficiently numerous where "as many as thirty-eight prisoners with mobility disabilities are in

2  the Jail on any given day" and "between 516 to 1,200 mobility disabled detainees are processed

3  by the Jail in any given year").

4        Here, the proposed Class in this case is sufficiently numerous that joinder of all members

5  of the Class is impracticable and unfeasible.  Defendants acknowledge that the Class currently

6  comprises at least 54 youth across the Facilities who were detained and known to have

7  disabilities as of July 2019.[8]  As the population of detained youth changes from month to month,

8  and even day to day, as youth enter and leave each of the Facilities, any single snapshot such as

9  this provides a conservative data point for evaluating numerosity.  Accordingly, even without

10  accounting for Plaintiffs' alleged deficiencies in Defendants' intake and screening processes that

11  may result in under-identification of youth with disabilities, the Class is sufficiently numerous.

12        Furthermore, the Class includes not only currently detained youth with disabilities, but

13  also every unknown future youth with disabilities in the Facilities thru the end of the Agreement

14  (August 31, 2022).  *Jewett*, 2017 WL 980446 at *5 (presumption of impracticability of joinder

15  "especially true where, as here, the Class includes future, unknowable Class members");

16  *Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 153 (N.D. Cal. 2015) (same).  All of these

17  young detainees—present and future—are or will be subject to Defendants' centralized policies

18  and practices regarding education and use of force.  Because Plaintiffs seek injunctive and

19  declaratory relief and the Class at issue includes future unknowable members, joinder is

20  inherently impracticable.  Therefore, the proposed Class satisfies the numerosity requirement of

21  Rule 23(a)(1).

                     **b.  *The Proposed Class Satisfies the Commonality Requirement.***

24        Commonality, the second requirement of Rule 23(a)(2), requires that plaintiffs' claims

25  share a common question of law or fact.  Fed. R. Civ. Proc. 23(a)(2).  "Class relief is 'peculiarly

---

[8] Probation Defendants stipulate that, according to their own data, this is an accurate snapshot of the population housed in the Facilities as of July 2019 with disabilities.  This also represents an accurate average population of youth with disabilities.

1   appropriate' when the 'issues involved are common to the Class as a whole' and when they 'turn

2   on questions of law applicable in the same manner to each member of the Class.'"  *General Tel.*

3   *Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1992) (quoting *Califano v. Yamasaki*, 442 U.S. 682,

4   701 (1979)).  A "single issue common to the Class" satisfies the commonality requirement.

5   *Kincaid v. City of Fresno*, 244 F.R.D. 597, 602 (E.D. Cal. 2007); *see also Rodriguez v. Hayes*,

6   578 F.3d 1032, 1048 (9th Cir. 2009), *rev'd on other grounds,* 591 F.3d 1105 (2010))

7   (commonality satisfied where there is "some shared legal issue or a common core of facts" even

8   if "members of the proposed Class do not share every fact in common or completely identical

9   legal issues").  The common questions of law and fact should have "the capacity . . . to generate

10  common *answers* apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes*,

11  564 U.S. 338, 350 (2011) (internal citations omitted).

12      In civil rights class action lawsuits, "commonality is satisfied where the lawsuit

13  challenges a system-wide practice or policy that affects all of the putative Class members," even

14  where there are "individual factual differences among the individual litigants."  *Armstrong v.*

15  *Davis*, 275 F.3d 849, 868 (9th Cir. 2001); *Parsons v. Ryan*, 754 F.3d 657, 682 (9th Cir. 2014);

16  *Hernandez*, 305 F.R.D. at 153 (commonality satisfied in action including ADA claims where

17  defendants operating jail had system-wide policies and practices concerning inmate medical care,

18  mental health care, and safety needs).  This is especially true in actions for injunctive relief,

19  which "by their very nature often present common questions satisfying Rule 23(a)(2)."  *Baby*

20  *Neal v Casey*, 43 F.3d 48, 56-57 (3d Cir. 1994); *Davis v. Astrue,* 250 F.R.D. 476, 486-88 (N.D.

21  Cal. 2008) (individual determinations on plaintiffs' varying disabilities were not required for

22  facial challenge to SSA's policies and procedures); *Riker v. Gibbons*, No. 3:08-CV-00115-LRH-

23  RAM, 2009 WL 910971, at *3 (D.Nev. Mar. 31, 2009) (commonality found in suit for injunction

24  to reform prison health care).

25      Here, Plaintiffs contend, and Defendants do not contest for settlement purposes, that the

26  commonality requirement is satisfied because Defendants have system-wide policies and

27  practices that apply to all Class members.  Any injunctive or declaratory remedy would apply to

28

the entire Class because the changes Plaintiffs seek are to Defendants' system-wide policies and practices. Plaintiffs further contend, and Defendants do not contest for settlement purposes only, that the determination of whether Defendants' policies and practices concerning youth with disabilities comply with state and federal disability laws will not vary based on the particular facts of each individual Class member, but on whether Defendants' systemic policies and practices fail to satisfy their legal obligations. *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) ("In general, a few factual variations among the Class grievances will not defeat commonality so long as Class members' claims arise from 'shared legal issues' or 'a common core of salient facts'"). That inquiry will involve questions of both law and fact common to the Class.

### c. *The Proposed Class Satisfies the Typicality Requirement.*

Class certification is proper under Rule 23(a)(3) when "the claims or defenses of the representative parties are typical of the claims or defenses of the Class." Fed. R. Civ. Proc. 23(a)(3). The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other Class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *see also Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1020 (9th Cir. 1998); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).

Representative claims are typical if they are "reasonably co-extensive with those of absent Class members; they need not be substantially identical." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (quoting *Hanlon,* 150 F.3d at 1020); *see also Parsons*, 754 F.3d at 686 (typicality satisfied where named plaintiffs were state prisoners who asserted exposure, like other members of putative Class, to risk of future harm by challenged policies and practices, even if named plaintiffs might have previously suffered varying injuries or have differing healthcare needs). Commonality and typicality are closely related, such that a finding of one usually requires a finding of the other. *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).

1    Here, Plaintiffs allege, and Defendants do not contest for settlement purposes only, that

2    the named Plaintiffs' claims are typical of those of the Class.  Plaintiffs contend that the

3    proposed Class representatives rely on the same legal theories, and seek the same declaratory and

4    injunctive relief that is broadly applicable to all members of the proposed Class.  Plaintiffs

5    further contend that all of the proposed Class representatives are students with mental health,

6    behavioral, learning, intellectual, and/or developmental disabilities that affect their daily life

7    activities who, at the time of the filing the Complaint, were eligible for special education and

8    related services and were detained within the Facilities.  During their respective detainment

9    within Facilities, all proposed Class representatives were subject to the same or similar use of

10   force and conditions of confinement, as well as the same educational, behavioral, and reentry-

11   planning services.  Defendants' conduct in implementing policies and practices within the

12   Facilities is not unique to the proposed Class representatives; the policies are developed by

13   Defendants and are followed by all staff members.  Thus, all members of the Class allege risk of

14   harm arising from the same system-wide policies and practices.

15   Accordingly, the proposed Class representatives have suffered the same or similar

16   injuries as other members of the Class, and Plaintiffs allege that at the time of filing of Plaintiffs'

17   Complaint they were all equally adversely affected by Defendants' policies and practices.  For

18   the foregoing reasons, the injuries suffered by the proposed Class representatives are typical of

19   other members of the Class in satisfaction of Rule 23(a)(3).

20                     **d.    *Class Representatives and Experienced Class Counsel***
                              ***Here Easily Meet the Adequacy Requirement.***

21

22   Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

23   the interests of the Class."  Fed. R. Civ. Proc. 23(a)(4).  Under Ninth Circuit precedent, adequacy

24   depends on the resolution of two questions: (1) whether "the named plaintiffs and their counsel

25   have any conflicts of interest with other Class members," and (2) whether "the named plaintiffs

26   and their counsel [will] prosecute the action vigorously on behalf of the Class."  *Hanlon*, 150

27   F.3d at 1020 (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.1978)).

28

1   Satisfying Rule 23(a)(4) thus depends on "the qualifications of counsel for the representatives, an

2   absence of antagonism, a sharing of interests between representatives and absentees, and the

3   unlikelihood that the suit is collusive." *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998)

4   (internal citation omitted).

5        Plaintiffs contend, and Defendants do not contest for settlement purposes only, that no

6   conflicts exist between named Plaintiffs, Class Counsel, and the settlement Class with respect to

7   the negotiation and consummation of the terms of this settlement.  Plaintiffs seek the same relief

8   here for themselves as they are seeking for the Class: declaratory and injunctive relief

9   compelling Defendants to change their policies and practices with respect to students with

10  disabilities detained within the Facilities.  Munson Decl. ¶ 27.  In protecting their own rights, the

11  named Plaintiffs will protect the rights of all proposed Class members.  *Hernandez*, 305 F.R.D.

12  at 160 ("Class representatives have less risk of conflict with unnamed Class members when they

13  seek only declaratory and injunctive relief."); *Am. Council of the Blind v. Astrue*, No. C05-04696

14  WHA, 2008 WL 4279674, at *6 (N.D. Cal. Sept. 11, 2008) (holding that where Plaintiffs do not

15  seek monetary damages, "[t]he potential for any conflict or collusion is … minimal").  The

16  individual Class representatives seek to enjoin the alleged unlawful acts and omissions of

17  Defendants, do not seek damages, and have no conflicts of interest that would be antagonistic to

18  other Class members.  Munson Decl., ¶¶ 27-29.  Thus, the named Plaintiffs are adequate

19  representatives of the Class under Rule 23(a)(4).

20       Plaintiffs' counsel also meet the requirements of Rule 23(g), and should therefore be

21  appointed Class counsel.  Under Rule 23(g), in appointing Class counsel, a court must consider:

22  "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii)

23  counsel's experience in handling Class actions, other complex litigation, and the types of claims

24  asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that

25  counsel will commit to representing the Class." Fed. R. Civ. Proc. 23(g)(1)(A).  Class counsel is

26  found to be adequate if they do not have "any conflicts of interest with other Class members"

27  and if they will "prosecute the action vigorously on behalf of the Class."  *Hernandez*, 305 F.R.D.

28

1   at 161 (internal quotation marks and citation omitted).

2          Adequacy of Class counsel is met here because Class Counsel's experience ensures that

3   they will fairly and adequately protect the interests of the Class.  Both Disability Rights

4   California ("DRC") and Disability Rights Advocates ("DRA") have extensive expertise in

5   complex civil litigation, in class action cases, and in litigation regarding the rights of students

6   with disabilities and conditions of detention.  Zito Decl., ¶¶ 5-6; Munson Decl. ¶¶ 13-15.  Class

7   counsel has done extensive work investigating the claims in this action, they are well-versed in

8   disability law, and they have more than sufficient resources to vigorously prosecute this case.

9   Zito Decl., ¶¶ 5, 6, 12, 14; Munson Decl. ¶¶ 3-10, 20-21.  *See Harper v. Law Office of Harris &*

10  *Zide LLP*, No. 15-CV-01114-HSG, 2016 WL 2344194, at *4 (N.D. Cal. May 4, 2016) (finding

11  adequacy of Class counsel where Plaintiffs' attorney appointed Class counsel in numerous Class

12  actions around the country, including those brought under the same federal laws); *Kim v. Space*

13  *Pencil, Inc*., No. C 11-03796 LB, 2012 WL 5948951, at *3 (N.D. Cal. Nov. 28, 2012) (finding

14  adequacy of Class counsel where counsel "have regularly engaged in major complex litigation

15  and have extensive experience in [] Class action lawsuits that are similar in size, scope and

16  complexity to the present case").  Further, no conflicts or collusion exist between opposing

17  counsel, Plaintiffs, and the proposed Class members that would compromise their ability to

18  represent the Class. Zito Decl., ¶ 13; Munson Decl. ¶ 22.  For all these reasons, Class counsel is

19  adequate for the purposes of Class certification under Rule 23(a)(4), and they should be

20  appointed Class counsel under Rule 23(g)(1) and (4).

21                    **e.   *The Ascertainability Requirement Does not Apply Here,***
                         ***but Even if it Did, the Class is Sufficiently Ascertainable.***
22

23          Plaintiffs allege, and Defendants do not contest for settlement purposes only, that the

    ascertainability requirement does not apply to classes certified under Rule 23(b)(2).  *Briseno v.*
24
    *ConAgra*, 844 F.3d 1121, 1126 (9th Cir. 2017) (holding that parties moving for class certification
25
    need not demonstrate ascertainability under Rule 23); *In re Yahoo Mail Litig.*, 308 F.R.D. 577,
26
    597 (N.D. Cal. 2015) (holding ascertainability requirement inapplicable to (b)(2) class); *Dunakin*
27

28

1    *v. Quigley*, 99 F. Supp. 3d 1297, 1386 (W.D. Wash. 2015); *Shelton v. Bledsoe*, 775 F.3d 554,

2    563 (3d Cir. 2015); *Shook v. El Paso Cty.*, 386 F.3d 963, 972 (10th Cir. 2004) (explaining "lack

3    of identifiability" of Class members cannot defeat certification of a (b)(2) class and "many courts

4    have found Rule 23(b)(2) well suited for cases where the composition of a class is not readily

5    ascertainable").

6         **2.  The Proposed Class Meets the Requirements of Rule 23(b)(2).**

7      In addition to meeting the requirements under Rule 23(a), Plaintiffs must also establish at

8    least one of the grounds for maintaining a class action under Rule 23(b) before a class will be

9    certified.  *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, No. 14-cv-

10   05596-JST, 2015 WL 5569462, at *4 (N.D. Cal. Sept. 22, 2015).  Here, the Parties have agreed

11   that class certification is warranted under Rule 23(b)(2).

12     A class action may be certified under Rule 23(b)(2) where "the party opposing the class

13   has acted or refused to act on grounds that apply generally to the class, so that final injunctive

14   relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed R.

15   Civ. Proc. 23(b)(2).  "[T]he primary role of this provision has always been the certification of

16   civil rights class actions."  *Parsons*, 754 F.3d at 686.  Plaintiffs assert, and Defendants do not

17   contest for settlement purposes only, that it is "unquestionably satisfied when members of a

18   putative class seek uniform injunctive or declaratory relief from policies or practices that are

19   generally applicable to the class as a whole."  *Id.* at 688 (certifying (b)(2) class of prisoners

20   challenging defendant's centralized policies and practices of "uniform and statewide application"

21   even where those practices "may not affect every member of the proposed class…in exactly the

22   same way"); Fed. R. Civ. Proc. 23(b)(2).  Rule 23(b)(2) is "'almost automatically satisfied in

23   actions primarily seeking injunctive relief.'" *Gray v. Golden Gate Nat'l Recreational Area*, 279

24   F.R.D. 501, 520 (N.D. Cal. 2011) (quoting *Baby Neal*, 43 F.3d at 58). "Cases challenging an

25   entity's policies and practices regarding access for the disabled represent the mine run of

26   disability rights class actions certified under Rule 23(b)(2)."  *Californians for Disability Rights,*

27   *Inc.*, 249 F.R.D. at 345 (certifying (b)(2) class of persons with disabilities challenging

28

*T.G., et al. v. Kern County, et al.*, Case No 1:18-cv-00257-JLT
**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND
RELATED MOTIONS**           **26**

1   transportation agency's use of deficient design guidelines and provision of inaccessible facilities)

2   (collecting cases).

3        The claims brought in this case are precisely the type of claims that Rule 23(b)(2) was

4   intended to cover.  Here, Plaintiffs seek broad declaratory and injunctive relief—system-wide

5   improvements in the Facilities' use of force, conditions of confinement, education, and services

6   —on behalf of a large and transitory class of detained students with disabilities whose rights are

7   violated by alleged deficiencies in Defendants' policies and practices.  Although each of

8   Defendants' policies and practices may not affect every member of the proposed class in exactly

9   the same way, they constitute shared grounds for all detained students in the proposed class.  *See*

10  *Rodriguez*, 591 F.3d at 1125 ("The fact that some class members may have suffered no injury or

11  different injuries from the challenged practice does not prevent the class from meeting the

12  requirements of Rule 23(b)(2).").  Therefore, certification of the proposed Class under Rule

13  23(b)(2) is proper.

14                    **B.    The Settlement Agreements Are Fair, Adequate, and Reasonable and
                            Thus Should be Granted Preliminary Approval.**

15

16        Federal Rule of Civil Procedure 23(e) conditions the settlement of any class action on

17  court approval.  *Hanlon*, 150 F.3d at 1025.  The Ninth Circuit recognizes the "overriding public

18  interest in settling and quieting litigation . . . particularly . . . in class action suits . . . ." *Van

19  Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Class Plaintiffs v. City of Seattle*,

20  955 F.2d 1268, 1276 (9th Cir. 1992); *see also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101

21  (9th Cir. 2008) ("There is a strong judicial policy that favors settlements, particularly where

22  complex class action litigation is concerned.").  A court may probe the parties' consensual

23  agreement only "to ensure that it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook,

24  Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1027); *see* Fed. R. Civ.

25  Proc. 23(e)(2) (the court may approve settlement "only after a hearing and on finding that it is

26  fair, reasonable, and adequate.").  To determine whether an agreement is fundamentally fair,

27  adequate, and reasonable, courts consider: (1) the strength of plaintiff's case; (2) the risk,

28

1  expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class

2  action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

3  completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the

4  presence of a governmental participant; and (8) the reaction of the class members to the proposed

5  settlement.  *Hanlon*, 150 F.3d at 1026.

6         However, courts need not assess all of these fairness factors at the preliminary approval

7  stage.  *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008); *In re: Volkswagen*

8  *"Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL

9  6091259, at *10 (N.D. Cal. Oct. 18, 2016).  Rather, at the preliminary approval stage, the Court

10  need only find that the proposed settlement is within the "range of reasonableness" such that it is

11  appropriate to disseminate notice to the class and schedule a fairness hearing.  5 Newberg §

12  13.15; *see also True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1063 (C.D. Cal. 2010)

13  (citing *Class Plaintiffs*, 955 F.2d at 1291); *Carter v. Anderson Merchs., LP*, Nos. EDCV 08-

14  00025-VAP (OPx), EDCV 09-0216-VAP (OPx), 2010 WL 144067, at *4 (C.D. Cal. Jan. 7,

15  2010).  Preliminary approval of a proposed class action settlement is appropriate where the

16  settlement "appears to be the product of serious, informed, non-collusive negotiations, has no

17  obvious deficiencies, [and] does not improperly grant preferential treatment to class

18  representatives or segments of the class . . . ." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d

19  1078, at 1079 (N.D. Cal. 2007); *see also Singh v. Roadrunner Intermodal Servs., LLC*, No.

20  115CV01497DADBAM, 2018 WL 2412325, at *3 (E.D. Cal. May 29, 2018), *modified,* No.

21  115CV01497DADBAM, 2018 WL 4382202 (E.D. Cal. Sept. 13, 2018); *Mathein v. Pier 1*

22  *Imports (U.S.), Inc.*, No. 116CV00087DADSAB, 2017 WL 6344447, at *3 (E.D. Cal. Dec. 12,

23  2017).

24         **1.    The Settlement Agreements Are Entitled to a Presumption of**
            **Fairness.**

25         Where a settlement is the product of arms-length negotiations conducted by experienced

26  class counsel, the Court begins its analysis with a presumption that the settlement is fair and

1  reasonable.  *See* 5 Newberg § 13.45; *Hall v. Cty. of Fresno*, No. 111CV02047LJOBAM, 2015

2  WL 5916741, at *4 (E.D. Cal. Oct. 7, 2015); *Fernandez v. Victoria Secret Stores, LLC*, No. CV

3  06-04149 MMM (SHx), 2008 WL 8150856, at *4 (C.D. Cal. July 21, 2008); *Nat'l Rural*

4  *Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D Cal. 2004).  Thus, at this stage,

5  so long as the settlement falls into the range of possible approval—giving deference to the result

6  of the parties' arms-length negotiations and the judgment of experienced counsel following

7  sufficient investigation—the presumption applies and the settlement should be preliminarily

8  approved.

9         Here, both the Probation and KCSOS Settlement Agreements are fundamentally fair,

10  adequate, reasonable, and free from collusion, and thus should be granted preliminary approval.

11  Plaintiffs and Probation Defendants reached the Probation Settlement Agreement after more than

12  ten (10) in-person and telephonic negotiations between counsel.  Zito Decl., ¶ 20. Similarly,

13  Plaintiffs and School Defendants reached the KCSOS Settlement after more than ten (10) in-

14  person and telephonic negotiations between counsel.  Zito Decl., ¶ 20.  Both Settlement

15  Agreements were negotiated in consultation with the respective experts in order to implement

16  their report findings.  In the case of the KCSOS Settlement, Dr. Elliot worked closely with

17  KCSOS as a neutral expert to assist in drafting their Schools Plan.  Zito Decl., ¶ 20.

18  Additionally, CJCA and Dr. Elliot shall be the Monitoring Experts for the Probation Plan and

19  Schools Plan, respectively.  Zito Decl., ¶¶ 22-23.

20         Further, Class Counsel collectively have extensive expertise in complex civil litigation, in

21  class action cases, and in litigation regarding the rights of persons with disabilities and

22  conditions of detention.  Zito Decl., ¶¶ 5-6; Munson Decl., ¶¶ 13-15.  They have investigated the

23  factual and legal issues raised in this action and diligently negotiated Plaintiffs' claims for close

24  to two and a half years.  Zito Decl., ¶¶ 15-20.  Counsel for both the Probation Defendants and

25  the School Defendants also possess substantial experience defending their client against class

26  actions.  Counsel on both sides view the Settlement Agreements as a successful compromise that

27  will resolve Class members' claims in a fair and efficient manner.  Zito Decl., ¶¶ 24-27.  Thus,

28

1    the fact that qualified, well-informed counsel endorse the Settlement Agreements as being fair,

2    reasonable, and adequate weighs in favor of preliminary approval.  That the Parties negotiated

3    the Settlement Agreements on the injunctive relief for the benefit of the putative Class, while

4    leaving determination of Plaintiffs' claims for attorney's fees and costs for later negotiation,

5    further demonstrates the absence of any collusion.  Zito Decl., ¶¶ 21.

6                    **2.    The Settlement Agreements Are Fair Given the Benefits to the
                          Class and the Risks Associated with Continued Litigation.**

7

8              Further, the significant benefits that the Class will enjoy under both Settlement

     Agreements, considered in light of the risks of litigation, support preliminary approval.

9

10                   **a.   *The Settlement Agreements Will Result in Substantial
                          Benefit to the Class.***

11             Under the Settlement Agreements, Defendants will modify their policies, practices, and

12   procedures to ensure that members of the Class are identified and tracked, housed in a safe and

13   supportive homelike environment, provided reasonable accommodations, and given equal access

14   to educational and rehabilitative programs and services.  The Probation Defendants will further

15   create new roles for staff tasked specifically with increasing rehabilitative programming,

16   improving youth interactions with staff, reducing use of force incidents, and generally changing

17   the facility culture from a corrections model to a treatment model.  The Schools Defendants will

18   moreover hire additional staff to enhance the education, special education and related services

19   offered to youth, as well as to train staff around mental health diagnoses and behavior, de-

20   escalation strategies and restorative practices.  Class Counsel are confident that these measures

21   required by the Settlement Agreements are sufficient to create a juvenile detention facility that

22   provides adequate education services, supports, and accommodations for youth with disabilities.

23   Zito Decl., ¶¶ 21-27.

24             Thus, the proposed Settlement Agreements will provide injunctive relief that is

25   reasonably calculated to effectuate the modifications necessary to make the Kern County

26   Juvenile Facilities and the Kern County Court Schools operated therein safe and supportive for

27   all youth, including youth with disabilities.  This is an excellent result for the Class, and it is

28

---

1    unlikely that this Court would order greater relief.

2          In comparison, courts routinely approve class action settlements in which the value of

3    class relief is much less than what could have been obtained at trial. *See, e.g., In re Heritage*

4    *Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (a

5    proposed settlement should not "be judged against a hypothetical or speculative measure of what

6    might have been achieved") (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of*

7    *San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)); *Nat'l Rural Telecomm's Coop*., 221 F.R.D. at

8    527 ("[I]t is well-settled law that a proposed settlement may be acceptable even though it

9    amounts to only a fraction of the potential recovery that might be available to the class members

10   at trial.").  Accordingly, the substantial benefits to the proposed Class weigh in favor of

11   preliminary approval of the Settlement Agreements.

12              **b.  *The Litigation Risks Support Preliminary Approval of the***
                       ***Settlement Agreements.***

13         The potential risks attending further litigation support preliminary approval.  "Estimates

14   of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at

15   trial, the expense of litigating the case, and the expected delay in recovery (often measured in

16   years)."  *Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM (JCx), 2012 WL

17   10274679, at *11 (C.D. Cal. Nov. 13, 2012).  Here, the Parties agree that the litigation risks

18   presented by this case are significant.  Zito Decl., ¶¶ 24-27.  The extensive factual issues and

19   novel legal issues in the case would involve extensive resources at trial, including the use of

20   experts.  Such factual and legal issues include: (1) the constantly changing populations of youth

21   in the Facilities and the resulting probability that current Class members will age out of the

22   Facilities before getting any relief; (2) ongoing policy revisions by Defendants which could

23   create different factual issues; (3) the expense of hiring experts for all Parties; (4) legal resolution

24   of any conflicts between federal and state laws and regulations; and (5) the novelty of Plaintiffs'

25   claims, many of which – like the challenge to pepper spray use – have never been challenged

26   under the ADA in California.  While Plaintiffs maintain that they would ultimately win on issues

27

28

---

1  of liability, and Defendants maintain that they would be successful in their defenses, these

2  Settlement Agreements are in the best interests of the Class as they achieve the broadest relief in

3  the shortest period of time.  Proceeding to trial, along with possible appeals, could delay

4  resolution of this matter by as many as seven years.  By contrast, under the Settlement

5  Agreements, relief for the Class will begin immediately after the Court grants final approval.

6  Given the importance of the negotiated relief to Class members' lives, the difference between the

7  possibly long delay involved in continued litigation and the immediate improvements promised

8  by the Settlement Agreements is an important consideration.  The risks of continued litigation

9  therefore weigh in favor of preliminary approval.

10  **C.    The Proposed Notice Satisfies Due Process and Should be Approved.**

11  Notice provided under Rule 23(e) must "generally describe[ ] the terms of the settlement

12  in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and

13  be heard." *Lane*, 696 F.3d at 826 (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962

14  (9th Cir. 2009)).

15  The notice standard is satisfied here.  First, the proposed notice informs members of the

16  Class of the relevant aspects of the litigation and the settlement, including: (1) a brief statement

17  of the claims released by the Class; (2) the date of the hearing on the Final Approval of the

18  Agreement with a clear statement that the date may change without further notice to the Class;

19  (3) the deadline for submitting objections to the Agreements; (4) contact information for

20  Plaintiffs' Counsel to answer questions, including whom to contact for questions in languages

21  other than English; (5) the address for Plaintiffs' Counsel's website with links to relevant

22  documents in the case; (6) instructions on how to access the case docket via PACER or in person

23  at the court's locations; and (7) how and where any objections should be submitted.  It has been

24  drafted to be readable at a Ninth-Grade reading level.  *See* Zito Decl., Exhibit 3 (Proposed

25  Notice).

26  Additionally, the Parties have agreed to the following distribution plan as set forth in the

27  Probation Settlement at § 9.4 and the KCSOS Settlement at § 9.4 within thirty (30) days after the

28

*T.G., et al. v. Kern County, et al.*, Case No 1:18-cv-00257-JLT
**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND
RELATED MOTIONS**                                                                32

1 District Court has issued an order granting preliminary approval:

2     1. Probation and Schools Defendants shall distribute the Notice to all youth currently at

3 the Juvenile Hall, Crossroads, or Camp Erwin Owen and mail a copy to those youth's respective

4 parents and/or guardians of record.  The outside front of the envelope or mailing surface shall

5 clearly be printed with the phrase "IMPORTANT SETTLEMENT DOCUMENTS ENCLOSED"

6 in both English and Spanish.  The Notice shall be mailed in a stand-alone mailing via First Class

7 U.S. Mail.   Schools Defendants and Probation Defendants may utilize the services of a third-

8 party vendor who specializes in the service of class action notices to accomplish this mailing.to

9 the parents of all youth in custody as well as any Class members not currently in custody.

10     2. Probation and Schools Defendants shall coordinate to ensure that the Notice is posted

11 in each classroom at each of the Facility Schools, in the visitor areas, the entrance lobby of

12 Juvenile Hall, Crossroads, and Camp Erwin Owen, as well as in a prominent place on each active

13 housing unit within the Facilities.  Defendants shall also mail a copy of the Notice to the Kern

14 County Juvenile Court Judges, the Kern County Public Defender's Office, the Kern County

15 Behavioral Health and Recovery Services, the Kern County Indigent Criminal Defense Panel, the

16 Kern County Department of Human Services – Child Welfare Division, and the Kern County

17 District Attorney's Office.  The posted Notices shall remain in place until the deadline for

18 submitting objections has passed.  Assuming that this Court approves the Settlement Agreements

19 at or soon after the hearing, Class members should have at least forty-five days to lodge

20 objections.

21     4. Plaintiffs' Counsel, Probation, and KCSOS shall each post on the front page of their

22 respective websites a copy of the Notice of Proposed Settlement of Class Action Lawsuit and the

23 proposed Settlement Agreements until the deadline for submitting objections has passed.

24 Following final approval Plaintiffs' Counsel and Defendants shall each post a copy of the final

25 Settlement Agreements on their respective websites.

26     The Parties have developed this proposed distribution plan taking into account the

27 breadth and magnitude of the Class.  The Notice will be translated and posted in English and

28

*T.G., et al. v. Kern County, et al.*, Case No 1:18-cv-00257-JLT
**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND
RELATED MOTIONS**    **33**

Spanish.[9]  Copies of the Settlement Agreements will be made available in Spanish upon request. Distribution of the Notice through posting in English and Spanish throughout the Probation and School Facilities will ensure that the Notice reaches the maximum number of members of the Class in the most efficient and cost-effective manner.  The proposed form of Notice and the proposed distribution plan will fairly apprise members of the Class of the settlement and their options with respect thereto, and fully satisfy due process requirements for a Rule 23(b)(2) class with no opt-out rights.  Zito Decl., ¶ 28.  The Court should approve the proposed notice and direct that it be distributed.

**D.    The Court Should Approve the Proposed Scheduling Order, Including Setting a Date for the Fairness Hearing.**

Once a court grants preliminary approval and notice is provided, the court conducts a "fairness hearing," at which all interested parties have an opportunity to be heard.  At such a hearing, the court conducts a substantive evaluation of the proposed settlement to determine whether it is "fundamentally fair, adequate, and reasonable."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016).

The Parties propose the following schedule:

| Event | Date |
|---|---|
| Defendants to provide notice as per CAFA requirements (28 U.S.C. § 1715(b)) | Within 10 days after filing of preliminary approval |
| Defendants will distribute the Notice to all incarcerated youth and mail Notice to parents of Class members | Within 30 days after entry of order granting preliminary approval |
| Defendants will post Notice in English and Spanish throughout Facilities | Within 30 days after entry of order granting preliminary approval |
| Class Counsel and Defendants will post the Notice and other settlement documents on their respective websites. | Within 30 days after entry of order granting preliminary approval |

---

[9] According to Probation Defendants, English and Spanish are the two primary languages spoken by youth and their families.

| Deadline for objections by Class members | 30 days before the Final Approval Hearing. |
|---|---|
| Defendants and Plaintiffs' Counsel will provide a declaration to the District Court attesting that they each disseminated Notice | At least 14 days before the Final Approval Hearing. |
| Deadline for Class Counsel and/or the Defendants to respond to any timely-filed objections and file Joint Motion for Final Approval of Settlement | 28 days before the Final Approval Hearing. |
| Deadline for Plaintiffs to file motions for approval/award of Attorneys' fees and costs. | At least 28 days before the Final Approval Hearing. |
| Final Approval Hearing | To be determined by the Court on or after February 4, 2020. |

## V.    CONCLUSION

For the foregoing reasons, the Parties respectfully request that this Court: (1) conditionally certify a settlement Class for injunctive relief under Federal Rules of Civil Procedure 23(a) and (b)(2); (2) grant preliminary approval of the Settlement Agreements; (3) approve and direct the publication of the Class notice proposed by the Parties; and (4) schedule a fairness hearing for final approval of the Settlement Agreements.  Pursuant to Local Rule 5-1(i)(3) concurrence in the filing of this document has been obtained from each of the signatories below.

DATED:  August 30, 2019              Respectfully submitted,

DISABILITY RIGHTS CALIFORNIA

/s/ Carly J. Munson
Carly J. Munson

and

DISABILITY RIGHTS ADVOCATES

/s/ Thomas P. Zito
Thomas P. Zito
Attorneys for Plaintiffs

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OFFICE OF KERN COUNTY COUNSEL

/s/ Margo A. Raison (as authorized on 8/30/19)

_____
Margo A. Raison, County Counsel
Attorney for Defendants: Kern County, Kern County
Probation Department, and TR Merickel

ATKINSON, ANDELSON, LOYA, RUUD &
ROMO

/s/ Mark R. Bresee (as authorized on 8/30/19)

_____
Mark R. Bresee
Attorney for Defendants: Kern County
Superintendent of Schools and Mary C. Barlow

---

*T.G., et al. v. Kern County, et al.*, Case No 1:18-cv-00257-JLT
**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND
RELATED MOTIONS**

1

LIST OF ADDITIONAL ATTORNEYS

2

MARGO A. RAISON (SBN: 133579)
KENDRA L. GRAHAM (SBN: 219760)

3

ANDREW C. THOMSON (SBN: 149057)
ANDREW HAMILTON (SBN: 299877)

4

Office of County Counsel, County of Kern
1115 Truxtun Avenue, Fourth Floor

5

Bakersfield, CA 93301
Phone: (661) 868-3848

6

Facsimile: (661) 868-3643
Email: kgraham@kerncounty.com

7

8

Attorneys for Defendants: Kern County, Kern County Probation Department, and TR Merickel

9

MARK R. BRESEE (SBN: 167346)
Atkinson, Andelson, Loya, Ruud & Romo

10

16870 West Bernardo Drive, Suite 330
San Diego, CA 92127

11

Phone: (858) 485-9526
Facsimile: (562) 653-3658

12

Email: mbresee@aalrr.com

13

Attorneys for Defendants: Kern County Superintendent of Schools and Mary C. Barlow

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*T.G., et al. v. Kern County, et al.*, Case No 1:18-cv-00257-JLT
**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND
RELATED MOTIONS**

37